**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                                    **NOT FOR CITATION**

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11

12

DAVID PERRAPATO,

13              Plaintiff,                          No. C 05-1017 PJH

14       v.                                 **ORDER GRANTING MOTION
                                            TO REMAND**
15   THE SAN FRANCISCO CHRONICLE,

16              Defendant.

17   _____/

18       Plaintiff's motion to remand came on for hearing before this court on June 15, 2005.

19   At the hearing, the court indicated that the motion would be denied.  Following the hearing,

20   however, the court ordered further briefing, which was completed on August 3, 2005.  Having

21   read the parties' papers and carefully considered their arguments and the relevant legal

22   authority, and good cause appearing, the court now GRANTS the motion to remand, as

23   follows.

24                                    **INTRODUCTION**

25       Plaintiff David Perrapato is employed by the San Francisco Chronicle ("the Chronicle")

26   as a pressman at the Chronicle's printing facility located at Union City, California.  During the

27   past two years, he has filed nearly 50 workplace safety complaints with the Chronicle, and has

28   also filed a number of complaints with the State of California Division of Occupational Safety

United States District Court

For the Northern District of California

1   and Health (Cal-OSHA).

2          On September 27, 2004, plaintiff was suspended by the Chronicle after one of the

3   presses shut down.  He claimed that he had nothing to do with the problem, and that it was

4   caused by a 40-year-old press that had not been properly maintained.  As a result of his

5   suspension, he lost wages and his health insurance was cut off.

6          Plaintiff belongs to a union, the San Francisco Web Pressmen & Prepress Union Local

7   No. 4 ("the Union"), which is a party to a Collective Bargaining Agreement ("CBA") with the

8   Chronicle.  The Union filed a grievance concerning plaintiff's suspension on September 29,

9   2004, and on October 4, 2004, and demanded arbitration in November 2004.  The Union also

10  filed a charge with the National Labor Relations Board.  Before the arbitration could take

11  place or the NLRB conducted any proceedings, the grievance was settled.

12         Pursuant to the settlement agreement, plaintiff's suspension was reduced to 30 days

13  without pay.  The Chronicle agreed to pay back pay after the 30-day suspension, minus

14  unemployment and other earnings made after the suspension.  The Chronicle sent plaintiff a

15  check for $1041.75, which constituted 36 work days minus unemployment benefits he had

16  received.  After plaintiff argued that his back pay should not be offset by unemployment

17  benefits, the Chronicle agreed to pay an additional $1,230, the amount it had offset for

18  unemployment benefits.  The Chronicle claims that plaintiff accepted these payments in

19  settlement of the grievance, and the Chronicle then sent the NLRB a letter confirming

20  settlement of plaintiff's claims.

21         Plaintiff was suspended a second time on December 19, 2004, for carelessness and

22  neglect of duty.  After further grievance negotiations, the Union and the Chronicle agreed that

23  plaintiff would be suspended from December 20, 2004, to December 27, 2004.

24         On February 8, 2005, plaintiff filed this action in the Small Claims Division of the

25  Superior Court of California, County of Alameda.  He alleges that he was suspended for

26  complaining to Cal-OSHA about health and safety violations at his workplace.  The

27  suspensions at issue are the same two suspensions that were the subject of the above-

28  described grievances.

United States District Court

For the Northern District of California

1    The Chronicle removed the case on March 10, 2005.  The Chronicle alleges that

2  plaintiff and the Union have asserted that plaintiff's suspension violates the CBA.  The

3  Chronicle contends that because plaintiff's claim implicates and requires interpretation of the

4  CBA, it is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

5  § 185.  Thus, the Chronicle asserts, the United States District Court has original jurisdiction

6  over this case.  Plaintiff now seeks an order remanding the case, and also seeks sanctions for

7  improper removal.

8    On the same day that plaintiff filed the motion to remand, he also filed a motion for

9  leave to amend the complaint.  The motion was granted after the Chronicle filed a statement of

10  non-opposition.  In the first amended complaint (FAC), plaintiff alleged two claims under

11  California law – a cause of action for violation of California Labor Code § 6310 (prohibiting

12  discharge, suspension, or discrimination against any person who complains about health and

13  safety violations); and a cause of action for retaliation in employment in violation of public

14  policy.  In his supplemental reply brief, filed August 2, 2005, plaintiff requested leave to

15  dismiss the second cause of action for retaliation in violation of public policy.  That request is

16  GRANTED.  Thus, only the Labor Code § 6310 claim remains in the case.

17                                **DISCUSSION**

18  A.    Motions to Remand

19    A defendant may remove a civil action filed in state court if the action could have

20  originally been filed in federal court.  28 U.S.C. § 1441.  The removal statutes are construed

21  restrictively, so as to limit removal jurisdiction.  Shamrock Oil & Gas Corp. v. Sheets, 313

22  U.S. 100, 108-09 (1941); Hofler v. Aetna US Healthcare, 296 F.3d 764, 767 (9th Cir. 2002).

23  Doubts as to removability are resolved in favor of remanding the case to state court.

24  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  There is a

25  "strong presumption" against removal jurisdiction.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th

26  Cir. 1992).

27  B.    Complete Preemption and LMRA § 301

28    Federal jurisdiction typically exists only when a federal question is presented on the

3

**United States District Court**

For the Northern District of California

1  face of the well-pleaded complaint.  Balcorta v. Twentieth-Century-Fox Film Corp., 208 F.3d

2  1102, 1106 (9th Cir. 2000).  A federal law defense to a state-law claim does not confer

3  jurisdiction on a federal court, even if the defense is one of federal preemption and is

4  anticipated in the plaintiff's complaint.  Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation

5  Tr. for S. Cal., 463 U.S. 1, 14 (1983).

6        An exception to the general rule arises whenever the preemptive force of a statute is so

7  strong that it "completely preempt[s]" an area of state law.  Balcorta, 208 F.3d at 1107.  The

8  complete-preemption exception to the well-pleaded complaint rule is applied primarily under

9  § 301 of the LMRA.  Id.  That section vests jurisdiction in the federal courts over suits for

10  violations of contracts between employers and labor organizations representing employees.

11  29 U.S.C. § 185(a).  The Supreme Court has interpreted § 301 as compelling complete

12  preemption of state law claims brought to enforce collective bargaining agreements.  Avco

13  Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557,

14  560 (1968).  The Court has also expanded § 301 preemption to include cases the resolution

15  of which "is substantially dependent upon analysis of the terms of [a collective bargaining

16  agreement]."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985).

17        The purpose of expanding complete preemption beyond the "suits for violations of

18  contracts" language of § 301 is to promote uniformity in the interpretation of CBAs and to

19  generate and preserve a body of consistent federal labor law.  Lingle v. Norge Div. of Magic

20  Chef, Inc., 486 U.S. 399, 405-06 (1988).  Another is to promote the federal policy favoring

21  arbitration and to prevent litigants from using state law litigation to side-step or alter the

22  negotiated provisions of a CBA, including the dispute resolution procedures.  Allis-Chalmers,

23  471 U.S. at 211.  However, § 301 preemption is "not designed to trump substantive and

24  mandatory state law regulation of the employee-employer relationship" or to protect employers

25  from all substantive aspects of state law.  Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th

26  Cir. 2002).  Thus, not every claim that requires a court to look at or refer to the language of a

27  labor-management agreement is necessarily preempted.  Assoc. Builders & Contractors, Inc.,

28  v. Local 302 Int'l Bd. of Elec. Workers, 109 F.3d 1353, 1357 (9th Cir. 1997).

4

United States District Court

For the Northern District of California

1      The Supreme Court has indicated that § 301 "cannot be read broadly to pre-empt non-

2   negotiable rights conferred on individual employees as a matter of state law." Livadas v.

3   Bradshaw, 512 U.S. 107, 123 (1994).  A claim brought in a state court on the basis of a state

4   law that is independent of rights under the collective bargaining agreement will not be

5   preempted, even if a grievance arising from precisely the same facts could be pursued.

6   Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (2005) (citing Livadas, 512 U.S. at 123).  In

7   addition, when the meaning of the terms of the CBA is not in dispute, the mere fact that a CBA

8   may be consulted in the course of state-law litigation does not mandate preemption of the

9   state law claim by § 301.  Id.  In order for complete preemption to apply, the need to interpret

10  the CBA "must inure in the nature of the plaintiff's claim.  If the claim is simply based on state

11  law, § 301 preemption is not mandated simply because the defendant refers to the CBA in

12  mounting a defense."  Id. (quoting Cramer v. Consolidated Freightways, 255 F.3d 683, 691

13  (9th Cir. 2001)).

14  C.    Plaintiff's Motion

15      Plaintiff argues that the case was improperly removed.  He contends that his claim –

16  that he is owed wages on account of his employer having suspended him for complaining

17  about health and safety violations – is legitimately brought as a claim under the California

18  Labor Code.   He asserts that his claim of retaliation based on the complaints to Cal-OSHA is

19  "independent of a labor contract" (citing Allis-Chalmers, 471 U.S. at 211-12).  Plaintiff

20  contends that Cal-OSHA's regulations protect all workers, irrespective of any labor

21  agreement, and that California's interest in providing the cause of action under Labor Code

22  § 6310 is the enforcement of the underlying statute or policy, not the regulation of employment

23  relationships.  Plaintiff argues that the claims in the FAC do not implicate the CBA in any way,

24  and that the CBA has no effect whatsoever on Labor Code § 6310.  Plaintiff also notes that

25  there is no section of the CBA that governs whether plaintiff can complain to Cal-OSHA about

26  hazardous working conditions or whether he can be suspended for such complaints.

27      The Chronicle opposes the motion, arguing that plaintiff's claim is inextricably

28  intertwined with a consideration of the terms of the CBA, and accordingly preempted by

5

**United States District Court**

For the Northern District of California

1   § 301 of the LMRA.  The Chronicle also asserts that plaintiff previously settled his claims by

2   admitting to some negligence and neglect of duty, and that he is now improperly alleging a

3   basis for the suspensions that he never asserted in the grievance process.  The Chronicle

4   contends that remanding this case would constitute harm to the collective bargaining process

5   and frustrate the purpose of § 301 preemption, because it would allow a union employee to file

6   a grievance, participate in the process, accept a settlement, and then "nullify the discipline and

7   basis ultimately determined in the grievance process."

8           The Chronicle also opposes the motion for attorney's fees, asserting that the removal

9   was well-founded and there is no basis for remanding the case.  Plaintiff contends, however,

10  that he is entitled to attorney's fees because the Chronicle's reasons for removing the case

11  were improper (claiming that the purpose for the removal was to "teach him a lesson" because

12  he complained about dangerous workplace safety conditions).  He also claims he should get

13  fees because of the "imbalance of power" between himself and the Chronicle.

14          In the order directing further briefing, the court requested that the parties address the

15  question whether the rule that a claim brought in a state court on the basis of a state law that is

16  independent of rights under the CBA will not be preempted by § 301 of the LMRA applies

17  even where a grievance has been filed on the adverse action that is the subject of the state

18  court complaint, in light of the U.S. Supreme Court's decision in Lingle (state tort claim for

19  retaliatory termination not preempted by § 301 of LMRA because application of state law in

20  that case would not require interpretation of CBA).

21          In his opening brief, plaintiff argues that Lingle controls in this case, although he also

22  asserts that his position is stronger than the position of the plaintiff in Lingle.  He notes that in

23  Lingle there was a "just cause for termination" provision in the CBA that could have been found

24  to implicate the CBA, whereas in the present case, the Chronicle has not pointed to a single

25  provision of the CBA that has to be interpreted for the state law retaliation claims to proceed.

26  He also asserts that there is no evidence of an intentional waiver by the union of its

27  employees's rights under state law.

28          In opposition, the Chronicle argues that the fact that plaintiff filed grievances is

6

United States District Court

For the Northern District of California

1  important in this case, because there is a "codependency" between the grievances and the

2  state court lawsuit.  The Chronicle contends that this is not a case of "parallel" actions as in

3  Lingle (where the grievance and the civil action were filed separately and proceeded

4  simultaneously), but rather, a case in which the two proceeded sequentially.  The Chronicle

5  contends that in determining the nature of the suspension (whether retaliatory or not), the court

6  "necessarily must view the parties' actions, rights and obligations through the framework of"

7  the CBA.

8      The Chronicle also claims that the complaint in this case "seeks to question the

9  discipline that was determined through the grievance process," and for that reason is

10  "intertwined with the [CBA]."  The Chronicle asserts that plaintiff seeks to "displace facts

11  already established" regarding his suspension through the grievance process, arguing that the

12  resolution of the grievance was that plaintiff, the union, and the Chronicle agreed that the

13  suspension was proper, based on plaintiff's violation of Office Rule 8 (carelessness and

14  neglect).  The Chronicle contends that this case therefore involves an admitted basis for the

15  suspension, which was undisputed by other evidence, and asserts that plaintiff cannot set

16  aside facts determined by the grievance process (i.e., the jointly determined reason for his

17  suspension) while at the same time trying to use other facts to establish his case (for example,

18  that the Chronicle's actions during the grievance process were malicious or were not

19  legitimate).

20      In reply, plaintiff contends that the Chronicle is confusing the need to "reference" the

21  CBA with the need to "interpret" the CBA, and argues that only the latter is sufficient to support

22  preemption.  Plaintiff asserts that the mere fact that this lawsuit followed an earlier unrelated

23  grievance proceeding is insufficient to establish a link between the two.

24      The court agrees with plaintiff that the claim under Labor Code § 6310 is independent

25  of his rights under the CBA, and that there is no need to interpret the CBA in order to consider

26  the merits of plaintiff's state-law claim.  As the Supreme Court stated in Livadas, § 301

27

28      cannot be read broadly to pre-empt nonnegotiable rights conferred on individual
      employees as a matter of state law. . . . [I]t is the legal character of a claim, as

7

**United States District Court**
For the Northern District of California

1    "independent" of rights under the collective bargaining agreement (and not
2    whether a grievance arising from "precisely the same set of facts" could be
     pursued) that decides whether a state cause of action may go forward.

3    Livadas, 512 U.S. at 123.

4         In Lingle, the employee filed a grievance pursuant to a CBA that protected workers

5    from discharge except for "just cause" and that provided for arbitration of disputes between

6    the employer and any employee concerning the effect or interpretation of the CBA.  While

7    arbitration was pending, the employee filed a retaliatory discharge action in an Illinois state

8    court, alleging that she had been retaliated against for exercising her rights under Illinois

9    worker's compensation laws.  The Supreme Court held that plaintiff's retaliatory discharge

10   claim was "independent" of the CBA because resolution of the state-law claim did not require

11   construing the CBA.  Lingle, 486 U.S. at 407.

12        Under California law, an employee who has been retaliated against because he or she

13   has filed a complaint about health and safety violations may file a claim under Labor Code

14   § 6310.  As with the Illinois plaintiff in Lingle, plaintiff's legal rights under § 6310 are

15   independent of his rights under the CBA.  Moreover, the factual inquiries involved in

16   determining whether the Chronicle retaliated against plaintiff will not require the court to

17   construe the CBA.  Thus, the doctrine of complete preemption does not apply, and this court

18   does not have subject matter jurisdiction.  Moreover, plaintiff did not waive his right to pursue

19   his statutory retaliation claim when he voluntarily submitted his grievance to the union.  See

20   Taylor v. Lockheed Martin Corp., 113 Cal. App. 4th 380, 387 (2003).

21        In arguing that resolution of plaintiff's claim will necessarily require interpretation of the

22   CBA, the Chronicle relies on Audette v. ILWU, 195 F.3d 1107 (9th Cir. 1999).  In that case, the

23   plaintiffs filed suit in a Washington state court, claiming that the defendants' failure to register

24   them as "Class B" longshore workers was discriminatory and retaliatory.  The Ninth Circuit

25   held that the state law discrimination and retaliation claims were preempted by the LMRA

26   because resolution of those claims would turn on whether the defendants had a legitimate,

27   non-discriminatory reason for the adverse action – examination of the legitimacy of the reason

28   proffered by the employer would necessarily involve interpretation of the CBA, as the

8

1   procedures relating to registration of longshore workers were set forth in the CBA. <u>Id.</u> at 1113.

2   Here, by contrast, plaintiff's Labor Code claim is a "free-standing" claim, which does not turn

3   on an interpretation of the CBA.

### CONCLUSION

5       In accordance with the foregoing, the court finds that the motion to remand must be

6   GRANTED.  The motion for sanctions is DENIED.

7

8   **IT IS SO ORDERED.**

9   Dated:  September 7, 2005

                                                        /s/
10                                      _____
                                        PHYLLIS J. HAMILTON
11                                      United States District Judge